# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA : <br> f/u/b D&M GENERAL CONTRACTING, : <br> INC., *et al.* : <br> : <br> v. : <br> : <br> ARCH INSURANCE COMPANY, *et al.* : | Civil No. CCB-13-89 |

## **MEMORANDUM**

Plaintiff D&M General Contracting, Inc. ("D&M") filed this action against Arch Insurance Company ("Arch") and NTVI Enterprises, LLC ("NTVI") related to delay costs it allegedly incurred during its performance of a subcontract to conduct electrical work on a building upgrade project for the National Security Agency. NTVI was the primary contractor and it posted a labor and material payment bond for the project with Arch as surety. Arch filed a motion to dismiss or, in the alternative, for summary judgment on D&M's original complaint, which now applies to Count I of D&M's amended complaint. NTVI has filed a separate motion to dismiss Count II, which Arch has adopted and joined. For the reasons set forth below, the motions will be denied.

## **BACKGROUND**

D&M is a commercial electrical construction contractor. (Am. Compl., ECF No. 19, ¶ 3). NTVI, as general contractor, entered into an agreement with the government (the "owner") to upgrade the chiller plant for a National Security Agency facility. (*Id.* ¶ 6). NTVI subcontracted with D&M to perform electrical work on the project. (*Id.* ¶ 7). According to D&M, the sequence of its work on the project was altered by the government, resulting in an additional $206,674.07 in costs to D&M. (*Id.* ¶ 9). Under Count I of the amended complaint, pursuant to the Miller Act, D&M now seeks payment from Arch, as surety, for this amount, which it believes it is due under its contract. (*Id.* ¶¶ 13-16).

1

In addition, under Count II of the amended complaint, D&M has brought a breach of contract action against NTVI. According to D&M, the government paid NTVI $141,000 for a portion of a claim D&M submitted to NTVI related to the increased costs, but NTVI never passed any of the payment on to D&M. (*Id.* ¶ 20). According to the subcontract, which is attached to the complaint, NTVI had an obligation "to pass through and/or certify a claim to the Owner, but only if the Contractor believes the claim is meritorious." (Compl., Ex. 1 ("Subcontract"), ECF No. 2-1, ¶ 16). The subcontract also states that disputes arising out of the government's acts, omissions, or responsibilities "shall be resolved in accordance with the disputes procedures in Contractor's contract with the Owner," but only "[a]t the Contractor's sole option." (*Id.* ¶ 39). D&M alleges that NTVI breached the subcontract by failing to properly bring D&M's claim to the government, failing to pay D&M out of the funds it received from the owner related to the claim, and subsequently waiving the right to recover the additional balance under the claim by agreeing to a contract modification with the government. (Am. Compl. ¶¶ 19-22).

## ANALYSIS

**I. Arch's Motion to Dismiss or, in the Alternative, for Summary Judgment**

Arch has moved to dismiss Count I of D&M's complaint as untimely under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A court considers only the pleadings when deciding a Rule 12(b)(6) motion. Where the parties present matters outside of the pleadings and the court considers those matters, as here, the motion is treated as one for summary judgment. *See* Fed. R. Civ. P. 12(b); *Gadsby by Gadsby v. Grasmick,* 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.,* 241 F. Supp. 2d 551, 556 (D. Md. 2003). "There are two requirements for a proper Rule 12(d) conversion." *Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*,

--- F.3d ----, 2013 WL 3336884, *10 (4th Cir. 2013). First, all parties must "be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment," which can be satisfied when a party is "aware that material outside the pleadings is before the court." *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985); *see also Laughlin v. Metro. Washington Airports Auth.,* 149 F.3d 253, 261 (4th Cir. 1998) (commenting that a court has no obligation "to notify parties of the obvious"). "[T]he second requirement for proper conversion of a Rule 12(b)(6) motion is that the parties first 'be afforded a reasonable opportunity for discovery.'" *Greater Baltimore*, 2013 WL 3336884 at *10.

D&M had adequate notice that the defendants' motion might be treated as one for summary judgment. The motion's alternative caption and attached materials are in themselves sufficient indicia. *See Laughlin*, 149 F.3d at 260-61. Moreover, D&M referred to the motion in its opposition brief as one for summary judgment and submitted additional documentary exhibits. If D&M had thought that it needed additional evidence to oppose summary judgment, Rule 56(d), which it has not invoked, afforded it the opportunity to seek further discovery through an affidavit. *See* Fed. R. Civ. P. 56(d); *see also Greater Baltimore*, 2013 WL 3336884 at *10 ("[The defendant] took 'the proper course' when it filed the Rule 56([d]) Affidavit, 'stating that it could not properly oppose . . . summary judgment without a chance to conduct discovery.'") (citation omitted); *Laughlin*, 149 F.3d at 261 (refusing to overturn district court's grant of summary judgment on assertions of inadequate discovery when the nonmoving party failed to make an appropriate motion under Rule 56([d])). Therefore, the court will consider the additional materials submitted by the parties and will treat Arch's motion as one for summary judgment.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is

3

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

Arch contends that it is entitled to judgment as a matter of law on Count I of the amended complaint because D&M's Miller Act claim is barred by the statute of limitations. Under the Miller Act, subcontractors have a federal cause of action to collect on a surety bond, 40 U.S.C. § 3133(b)(1), but such an action "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." § 3133(b)(4). "The beginning of this one-year statute of limitations is determined by 'whether the work was performed and the material supplied as a part of the original contract or for the

purpose of correcting defects, or making repairs following inspection of the project.'" *United States ex rel. Acoustical Concepts Inc. v. Travelers Cas. & Sur. Co. of Am.*, 635 F. Supp. 2d 434, 442 (E.D. Va. 2009) (quoting *United States ex rel. Noland Co. v. Andrews*, 406 F.3d 790, 792 (4th Cir. 1969)).[1]

D&M filed this action on January 8, 2013, and there is a genuine issue of material fact as to whether the work D&M performed on or after January 8, 2012 was "part of the original contract" or was merely remedial or corrective "punch list" work. Arch states that October 27, 2011, was the last date on which D&M performed labor under the contract. D&M has adduced evidence showing that in January and March, within one-year of bringing suit, the subcontractor conducted (1) "black start testing and commissioning" which it submits "was an inspection and testing requirement of the base contract"; (2) a lighting inspection for U.L. Certification "required by the base contract"; (3) the installation of a surge protector during the inspection required by the original contract for the lighting protection system; (4) the removal of a previously installed function on breakers in the boiler control at the request of the owner; and (5) a modification to the fire alarm system and final testing of the system as directed by the owner. (*See* Brock Aff., ECF No. 14-2, ¶ 2).

The last two items may well be, as Arch insists, remedial or corrective, given that they appear to be secondary projects that were completed after inspection at the owner's request, not during D&M's initial completion of its contractual obligations, and, thus, they would not toll the statute of limitations. On the other hand, the first three items may have been work "performed . .

---

[1] Arch erroneously suggests, citing *Highland Renovation Corp. v. Hanover Ins. Group*, 620 F. Supp. 2d 79, 84 (D.D.C. 2009), a non-binding case from another circuit, that the standard is whether "the work that was performed was significant or crucial to the operation of the project." (*See* Arch Mot., ECF No. 11, at 10-11). This is not the applicable standard. The standard in this "and the majority of circuits," as explained above, is only whether "the work was performed and the material supplied as a part of the original contract or for the purpose of correcting defects, or making repairs following inspection of the project." *United States for Use of Magna Masonry, Inc. v. R.T. Woodfield, Inc.*, 709 F.2d 249, 251 (4th Cir. 1983) (quoting *Noland*, 406 F.3d at 792).

. as a part of the original contract," even though the work appears to have been primarily in the nature of inspections and testing. Although Arch offers several cases that it argues support disqualifying such work as tolling the statute of limitations, none of this authority addresses the precise situation here where the work was not necessarily principal labor under the contract, but where it was still part of D&M's original contractual charge and did not occur "*following inspection*" for the purpose of remediation or repair. For example, Arch points to *United States v. Hartford Fire Ins. Co.*, but there the court had no trouble finding the work at issue was corrective or remedial because the original subcontract had called for installing a sidewalk and the subcontractor was attempting to use its digging up and rebuilding that sidewalk as a basis for tolling the Miller Act's statute of limitations. 2010 WL 5026950, at *4 (E.D. Va. 2010).[2] On the contrary, D&M points to *Viscount Const. Co., Inc. v. Dorman Elec. Supply Co., Inc.*, and argues that testing conducted by a contractor that is part of its initial completion of a contract is not "remedial" and can be counted in calculating the statute of limitations. *See* 511 A.2d 1102, 1104-05 (Md. App. 1986) (agreeing with trial court that a U.L. certification was "an absolutely essential part" of the specific contract there in calculating limitations under Maryland's analogous "Little Miller Act").

*United States ex rel. East Coast Contracting v. U.S. Fidelity and Guarantee Co.*, 2004 WL 1686496 (D. Md. 2004), is useful as a comparison.[3] There, this court held that an inspection did not toll the Miller Act's limitations, but the inspection was conducted by the subcontractor after it had already completed its installation of concrete slabs and sidewalks, at the request of the contractor, because the concrete had apparently become damaged by other parties. *Id.* at *1.

---

[2] "No original subcontract would call for a sidewalk to be built, dug up, and rebuilt. If a subcontract called for the building of a sidewalk, the only way it would also call for that sidewalk to be dug up and rebuilt would be under a warranty. The work here therefore may or may not have been deserved under a warranty, but it could not have been part of the original subcontract."

[3] Unpublished cases are not cited for any precedential value.

The subcontractor "itself did not regard the . . . inspection as integral to its obligations under the contract," rather, "it maintained . . . that its work under the contract was 'completed and punched out,' with the consequence that further work would necessitate a new 'agreement' with [the contractor]." *Id.* at *4. By contrast, the Fourth Circuit in *Noland* held that a Miller Act claim was timely because the valve installation work at issue was conducted "at no extra charge to the [g]overnment or to the general contractor" and "[n]either the contractor nor the subcontractor was ever in doubt as to its obligation to install the valves in order to finish the job." 406 F.2d at 792-93. Here, similarly, D&M has unequivocally taken the position that the work it performed on or after January 8, 2012, was part of its original subcontract and would need to have been completed whether or not any additional corrective or remedial work was necessary; Arch also admits that this work was required under the original subcontract and that D&M is not claiming it is owed any additional compensation beyond its initial contract for this work.

In light of this authority, D&M has plausibly submitted, via affidavit, that the black start testing and U.L. Certification inspection it conducted within a year of filing suit was all part of its original contractual obligations and was not merely remedial. (*See* Brock Aff. ¶ 2(a); (b)). Arch states that the project had been substantially completed and was operational by the time D&M performed this work, and Arch insists that the work was merely ancillary to the original subcontract. (*See* Lien Aff., ECF No. 11-1, ¶¶ 6-7). Thus, there remains a genuine issue of material fact as to whether this work was indeed "part of the original contract" such that the one-year statute of limitations did not begin until the work was completed. If so, D&M's Miller Act claim would be timely. Accordingly, Arch's motion to dismiss or, alternatively, for summary judgment will be denied.

**II. Arch's and NTVI's Motions to Dismiss Count II of D&M's Amended Complaint**

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled

7

allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Courts may consider extrinsic evidence when ruling on a motion under Rule 12(b)(6) "if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (brackets and quotation omitted). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim . . . . However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Although the language in the subcontract seems to have given NTVI some discretion in its obligation to prosecute a proper claim against the owner, (*see* Subcontract ¶¶ 16, 39), NTVI appears to concede in its motion to dismiss that it was under an obligation to pass D&M's claim

on to the government. (*See* NTVI Mem., ECF No. 28-1, at 7-8) ("NTVI complied with all of its contractual obligations to D&M. Namely, NTVI passed D&M's claim to the Government for consideration pursuant to the terms of the Subcontract."). Accordingly, D&M has, under the terms of the subcontract, plausibly alleged that NTVI breached its agreement by failing to pay D&M from funds it received related to D&M's claim, failing to properly submit the claim to the government, and unilaterally waiving D&M's rights to prosecute its claim against the government.

Otherwise, NTVI's various arguments in its motion to dismiss all seek to prematurely litigate the merits of D&M's claim. While NTVI may ultimately prove, as it argues, that it did properly pass the claim up to the government, that it did not fail to pass on any funds it received related to D&M's claim, that the government, in fact, rejected D&M's claim, effectively closing the matter, and that D&M's allegation that NTVI inappropriately waived D&M's rights against the government is meritless, all of these arguments require evidence and factual findings that go beyond the scope of a motion under Rule 12(b)(6). Accordingly, NTVI's motion to dismiss Count II, and by extension, Arch's motion to dismiss Count II on the grounds submitted by NTVI, must be denied.

## CONCLUSION

For the reasons stated above, Arch's motion for summary judgment and NTVI and Arch's motions to dismiss will be denied.

A separate Order follows.

| | |
|---|---|
| _____8/5/13_____ | _____/s/_____ |
| Date | Catherine C. Blake |
| | United States District Judge |